**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x

IBRAHIM FARAG                    :
                                           :

                    **Plaintiff,** :

                                           :      **1:25-cv-3928 (ALC)**

       -against-                      :

                                           :      <u>**OPINION & ORDER**</u>

UNITED STATES CITIZENSHIP AND      :
IMMIGRATION SERVICES, et al.,         :
                                           :

                    **Defendants.**    :
---------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

     *Pro se* Plaintiff Ibrahim Farag filed an action seeking that the Court 1) declare that

Defendants United States Citizenship and Immigration Services ("USCIS"), Joseph B. Edlow,

Kristi Noem, and Pam Bondi ("the Defendants") erred in denying his Petition for Form I-360 for

a green card (the "Petition") as a widower of a U.S. citizen and 2) order the re-adjudication of his

I-360. Defendants and Plaintiff cross-moved for summary judgment. Because Defendants'

decision was neither arbitrary nor capricious and was based on substantial evidence, the

Defendants' Motion for Summary Judgment is GRANTED.

**BACKGROUND**

**Factual Background**

     On May 10, 2015, Plaintiff, Ibrahim Farag, an Egyptian national, applied for a non-

immigrant, H-2B work visa ("NIV application"), stating under penalty of perjury that since May

2011 he had been employed by Mohsen Hanna, a U.S. citizen, as Hanna's "[c]ompanion and

caretaker." Administrative Record ("AR") at 203. In the NIV Application, Plaintiff represented

that he "organize[d] his [employer's] daily activities, meals, medications, shopping, bathing and

1

grooming" as "[t]he old man is diabetic and suffers [f]rom Parkinson Disease." *Id.* The interviewer considering the NIV application noted that Plaintiff was an attorney, had been given power of attorney by Hanna, and had two properties transferred to him from Hanna. *Id.* at 199. Plaintiff's NIV application was denied on May 19, 2015. *Id.*

The United States Department of State's National Visa Center's Fraud Prevention Unit was alerted to Plaintiff's NIV Application and issued a memorandum on August 11, 2016. *Id.* at 197. Plaintiff subsequently applied for, and received, a K-1 fiancé visa and entered the United States on December 31, 2016. *Id.* at 3. Plaintiff married Hanna in New York City on January 4, 2017. *Id.* at  3, 240. At that time, Hanna was 75 years old and Plaintiff was 26 years old. *Id.* at 213, 217. Plaintiff did not submit evidence, like a joint lease or mortgage, to demonstrate that, at any point, the two intended to live together in Plaintiff's apartment in New York. *Id.* at 3. Fifteen days later, on January 19, 2017, Hanna traveled to Egypt without Plaintiff. *Id.* Hanna lived in Egypt until his death in April 2019. *Id.*

Other than a single no-text email with the subject line, "Hello my love," Plaintiff did not submit translated correspondence reflecting an intimate relationship. *Id.* at 152. Plaintiff submitted three affidavits: one from Plaintiff's sister, one from a friend and one from a neighbor. Though Plaintiff stated that his "relationship [with Hanna's sister] became very good in June 2018" and that he was "in constant contact" with her and her husband, their children, and Hanna's brother in the last months of Hanna's life, Plaintiff did not submit an affidavit from any of Hanna's family. *Id.* at 4, 21. The affidavit from Plaintiff's sister states that Plaintiff and Hanna continuously lived together from 2011 onwards but does not mention a spousal or romantic relationship. *Id.* She understood him to simply serve as Hanna's full-time caregiver.

2

Plaintiff submitted two other affidavits, one from a friend and one from a neighbor in New York. The one from a friend mentions the marriage and states that Plaintiff was madly in love with Hanna despite the age difference. *Id.* at 78. The neighbor's affidavit states that he was aware of Plaintiff's marriage but noted a "big" age difference between Plaintiff and Hanna. *Id.* at 87.

In a statement to USCIS, Plaintiff explained that Hanna left for Egypt shortly after they were married to sell properties without Plaintiff since Hanna's family disliked Plaintiff. *Id.* at 19. Plaintiff also stated that after Hanna died, Plaintiff was subjected to accusations of stealing from Hanna and "practicing homosexuality" in Egypt. *Id.* at 22. Plaintiff was acquitted of theft and fraud but sentenced to a year of labor for homosexuality. In August 2019, Plaintiff fled the sentence and went to the U.S. Embassy in Egypt, seeking to flee to America because he believed his life was in danger. However, Plaintiff's request was denied. *Id.* at 23.

On September 29, 2020, USCIS received from Plaintiff's then-counsel a Petition for Amerasian, Widow(er), or Special Immigrant, Form I-360. *Id.* at 211-29. On June 10, 2021, USCIS sent Plaintiff a Request for Evidence ("RFE") concerning a death certificate and evidence of a *bona fide* marriage. *Id.* at 191-196. USCIS's RFE advised Plaintiff that, "except where as a different standard is specified by law, a petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought." *Id*. at 194. The RFE directed Plaintiff to "submit evidence to show that you and your spouse entered the marriage in good faith," which "should cover the entire period of your marriage." *Id.* On August 12, 2021, USCIS received the evidence described above from Plaintiff. *Id.*at 2.

3

USCIS denied Plaintiff's Petition and issued a written decision on May 26, 2022. *Id*. at 1. In its decision, USCIS reviewed the evidence Plaintiff submitted and found it was "insufficient . . . to establish[] [Plaintiff] and Mohsen Hanna shared a good faith bona fide marital relationship." *Id*. at 3. Among other things, USCIS noted that Plaintiff and Hanna "were only together as a [married] couple for a total 19 days before Mohsen Hanna returned to Egypt," and that Plaintiff thereafter remained in America, with Hanna in Egypt, for the next six months. *Id*. at 3. USCIS explained that "[i]t remains unclear to USCIS why Mohsen Hanna would leave and travel to Egypt without you as his continued caregiver" given Plaintiff's role as caregiver and "given that you and he were united in marriage only a few weeks prior to his departure." *Id.* at 4. USCIS further "note[d] that there were no affidavits provided by [Hanna's family]," though Plaintiff represented they had a good relationship at the time point Hanna died and they were in "constant contact." *Id.*

After describing, in some detail, the affidavits offered by Plaintiff's sister, friend, and neighbor, USCIS found that "[t]hese affidavits are very general and lack details." *Id.* at 4-5. In particular, USCIS noted they "provided no details regarding your courtship" or their "life together." *Id.* at 5. Accordingly, "USCIS place[d] minimal weight on the affidavits as evidence that could establish [Plaintiff] entered into a marriage with Mohsen Hanna in good faith and not to circumvent immigration laws." *Id.* Finding Plaintiff had failed to "establish[] that [he] and Mohsen Hanna entered into [their] marriage in good faith and with the intent to create a life together and not to circumvent immigration laws in order to obtain an immigration benefit," USCIS denied Plaintiff's petition. *Id.* at 6.

**I-360 Petitions**

"The Immigration and Nationality Act (INA) of 1952, 8 U.S.C. § 1101 et seq., authorizes noncitizens to obtain immigrant visas based on a qualifying relationship with an American citizen or lawful permanent resident. Typically, the process to obtain a family-based visa begins with an I-130 Petition, which officials use to verify that the U.S. citizen has a relative who is eligible to immigrate to the United States." *Alhabra v. Rubio*, No. CV 24-854 (SLS), 2025 WL 985457, at *1 (D.D.C. Apr. 2, 2025); *See also* 8 U.S.C. §§ 1154, 1151(b)(2)(A)(i). Under the INA, immediate relatives are defined as "the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age." 8 U.S.C. § 1151(b)(2)(A)(i). If a U.S. citizen passes away before USCIS adjudicates the petition, the noncitizen must file an I-360 Petition with USCIS or a U.S. Embassy to obtain an immigrant visa based on their immediate relationship with the deceased U.S. citizen. *See 8* C.F.R. § 204.1(a)(2)8 C.F.R. § 204.1(a)(2); 8 U.S.C. § 1151(b)(2)(A)(i).

**Procedural History**

On May 12, 2025, Plaintiff filed a Complaint. ECF No. 1. On December 15, 2025, Defendants filed their Motion for Summary Judgment. ECF No. 19. On December 18, 2025, Plaintiff filed his Motion for Summary Judgment. ECF No. 22. On January 12, 2026, Defendant filed a Reply. ECF No. 24. On January 15, 2026, Plaintiff filed a Reply. ECF No. 26.

STANDARD OF REVIEW

**Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and

the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

When examining the record, "the court must resolve all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist*., 963 F.2d 520, 523 (2d Cir. 1992). "[O]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Here, the Parties do not dispute the genuineness of the Administrative Record, and generally do not raise factual disputes. Thus, the Court's consideration of the parties' cross-motions for summary judgment will focus on the legality of the agency's decision in this case, not on the existence or nonexistence of disputed issues of material fact. *See Colgan v. Garland*, No. 3:24-CV-0591 (SVN), 2025 WL 2783594, at *5 (D. Conn. Sept. 30, 2025).

**Reviewing an Agency's Decision**

"The Court is empowered to review the determinations of federal agencies under 5 U.S.C. § 706." *Id.* at *6. A court reviewing an agency's action, findings or conclusions shall "hold unlawful and set aside" any determinations that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706 (2)(A)–(B). Under this standard, a court's scope of review is "narrow and a court is not to substitute its judgment for that of the agency." *Motor*

*Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The decision of the agency will be set aside only when it "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Cnty. of Westchester v. U.S. Dep't of Hous. & Urb. Dev.*, 802 F.3d 413, 431 (2d Cir. 2015).

"First, the Court must determine whether USCIS acted arbitrarily and capriciously in determining that substantial and probative evidence of marriage fraud existed. *See Simko v. Bd. of Immigr. Appeals*, 156 F. Supp. 3d 300, 310 (D. Conn. 2015). Second, the Court must examine whether USCIS's determination that Plaintiffs failed to rebut this finding was arbitrary and capricious." *Colgan*, 2025 WL 2783594, at *6.

## DISCUSSION

### I. USCIS properly considered inconsistencies in the evidence Plaintiff provided.

In its June 7, 2022 decision, USCIS properly considered numerous inconsistencies in the evidence Plaintiff provided in its reasoning to support its denial of his I-360 Petition. Plaintiff submitted testimony under penalty of perjury that does not support a bona fide marriage between him and Mohsen Hanna. As the Government notes in its brief for summary judgment, less than two years before marrying Hanna, Plaintiff, in seeking a work visa, claimed to be employed as a caregiver by Hanna, "the old man . . . suffer[ing] from Parkinson Disease." Government's Motion for Summary Judgment ("Gov't Mot.") at 14.  Plaintiff concedes that he "disclosed only part of the truth"  because of "a legally dangerous environment in Egypt." Plaintiff's Motion for

Summary Judgment ("Pl. Mot.") at 3.  The Court finds that USCIS properly considered the inconsistencies between testimony Plaintiff provided in 2015 when he purported to be Hanna's employee and then later in 2017 when he purported to be his husband.

The Government also argues that USCIS properly considered inconsistencies in testimony from Plaintiff's family, friends, and Hanna's family. Plaintiff's sister submitted an affidavit to USCIS on Plaintiff's behalf. Yet, she was apparently unaware that Plaintiff had married Hanna. Plaintiff told USCIS that Hanna's brother was "aware of everything" (AR at 21) and that Plaintiff was "in constant contact" with other members of Hanna's family. *Id*. However, Plaintiff did not submit affidavits from any members of Hanna's family. USCIS's belief that these inconsistencies were suspicious was not arbitrary or capricious.

**USCIS properly considered indicators of Plaintiff's marriage fraud.**

The Government argues that USCIS's decision to deny Plaintiff's petition for an I-360 was sound because it relied on an August 2016 memorandum from the National Visa Center's Faud Prevention Unit. The memorandum laid out "Possible Fraud Indicators" including that Plaintiff was an attorney in Egypt, had gained power of attorney of Hanna's business and personal affairs, had transferred two of Hanna's properties to Plaintiff's name, and the 48-year age gap between Hanna and Plaintiff. AR at 197.

While not part of the memorandum, the administrative record that USCIS used in its decision demonstrated that fifteen days after Hanna and Plaintiff married, Hanna left for Egypt and the two lived separately for six months. AR at 3. The Court finds that it was neither arbitrary nor capricious for USCIS to consider these factors in the aggregate as evidence of marriage fraud.

8

**II. Plaintiff does not provide sufficient evidence to rebut USCIS's decision.**

Once USCIS decided there was substantial evidence that Plaintiff and Hanna's marriage was not *bona fide*, Plaintiff had the ability to rebut USCIS's finding. However, he failed to do so. Courts examining bona fide marriages look for whether a spouse was listed on insurance policies, property leases, income tax forms, or bank accounts. *In re Riero*, 24 I. & N. Dec. 267, 269 (B.I.A. 2007). Plaintiff did not submit any such documentation. AR at 5. While Plaintiff did submit affidavits from a friend and a neighbor stating that Plaintiff and Hanna were in a loving relationship, USCIS found, both affidavits "are very general and lack details" with respect to Plaintiff and Hanna's relationship and, in particular, "provided no details regarding [Plaintiff and Hanna's] courtship" or their "life together." AR at 4-5. Because the affidavits lacked details, USCIS was allowed to give them less weight when evaluating them. *See Kazinetz v. USCIS*, No. 12-CV-81078-KAM, 2014 WL 2696575, at *6 (S.D. Fla. June 13, 2014).

**III. USCIS did not properly consider Plaintiff's homosexuality in the context of Egypt.**

Plaintiff argues that USCIS did not take into account that same-sex couples in Egypt cannot live openly when coming to its decision. Pl. Mot. at 2. But, USCIS acknowledged this reality and did not draw negative inference against Plaintiff for failing to produce documents showing a shared life between him and Hanna in Egypt. For example, USCIS did not draw a negative inference based on Plaintiff not being mentioned in Hanna's obituary in Egypt. AR at 4. USCIS focused its analysis of the record on Hanna and Plaintiff's life in New York. Therefore, the Court finds that USCIS did not make a decision that was arbitrary or capricious.

**CONCLUSION**

For the aforementioned reasons, Defendants' Motion for Summary Judgment is

9

GRANTED. The Clerk of Court is respectfully directed to terminate ECF No. 18.

**SO ORDERED.**

**Dated:** May 26, 2026

        **New York, New York**
                                                    **ANDREW L. CARTER, JR.**
                                                 **United States District Judge**